UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN L. JEWETT, on behalf of herself, individually, and on behalf of all others similarly situated, and on behalf of the FRANCISCAN ALLIANCE PENSION SECURITY PLAN, | ) ) ) ) | Civil No. _____ |
| | ) | Judicial Officer: _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| FRANCISCAN ALLIANCE, INC., an Indiana Non-profit Corporation, THE PENSION COMMITTEE FOR THE FRANCISCAN ALLIANCE PENSION SECURITY PLAN, JOHN and JANE DOES 1-20, MEMBERS OF THE PENSION COMMITTEE FOR THE FRANCISCAN ALLIANCE PENSION SECURITY PLAN, each an individual, and JOHN and JANE DOES 21-40, each an individual, | ) ) ) ) ) ) ) ) ) ) ) | **CLAIM OF UNCONSTITUTIONALITY** |
| Defendants. | ) | |

## **Table of Contents**

I.  INTRODUCTION .................................................................................................. 1

II.  JURISDICTION AND VENUE ............................................................................ 4

III.  PARTIES ................................................................................................................ 5

    A.  Plaintiff Jean L. Jewett .............................................................................. 5

    B.  Defendants ................................................................................................. 6

IV.  THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ............................... 7

    A.  The Adoption of ERISA ............................................................................. 7

    B.  The Scope of the Church Plan Exemption in 1974 ................................... 8

    C.  The Changes to the Church Plan Exemption in 1980 ............................... 9

V.  FRANCISCAN ALLIANCE ................................................................................. 13

    A.  Franciscan Alliance's Operations .......................................................... 13

    B.  The Franciscan Alliance Pension Security Plan ..................................... 16

        1.  The Franciscan Alliance Pension Security Plan Meets the
            Definition of an ERISA Defined Benefit Plan ........................... 16

        2.  The Defendants Meet the Definition of ERISA Fiduciaries ................. 17

            a.  Nature of Fiduciary Status .......................................... 17

            b.  Defendants Are Each ERISA Fiduciaries ................... 18

        3.  The Franciscan Alliance Pension Security Plan Is Not a
            Church Plan ................................................................................ 19

            a.  Only Two Types of Plans May Qualify as Church
               Plans and the Franciscan Alliance Pension Security
               Plan Is Neither Type ............................................. 20

            b.  Even if the Franciscan Alliance Pension Security
               Plan Could Otherwise Qualify as a Church Plan
               under ERISA §§ 3(33)(A) or (C)(i), it is Excluded

From Church Plan Status under ERISA § 3(33)(B)(ii) ................................................... 25

    c.    Even if the Franciscan Alliance Pension Security Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Franciscan Alliance, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective ................................................... 26

VI.    CLASS ALLEGATIONS ................................................... 27

    A.    Numerosity ................................................... 28

    B.    Commonality ................................................... 28

    C.    Typicality ................................................... 28

    D.    Adequacy ................................................... 29

    E.    Rule 23(b)(1) Requirements ................................................... 29

    F.    Rule 23(b)(2) Requirements ................................................... 30

    G.    Rule 23(b)(3) Requirements ................................................... 30

VII.    CAUSES OF ACTION ................................................... 31

    COUNT I ................................................... 31

    (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance, Defendant Franciscan Alliance Pension Committee and John and Jane Does 1-20, the Franciscan Alliance Pension Committee Member Defendants) ................................................... 31

    COUNT II ................................................... 33

    (Claim for Violation of Reporting and Disclosure Provisions Against Defendant Franciscan Alliance Pension Committee and John and Jane Does 1-20, the Franciscan Alliance Pension Committee Member Defendants) ................................................... 33

    1.    Summary Plan Descriptions ................................................... 33

2.      Annual Reports ................................................................... 33

3.      Summary Annual Reports ..................................................... 34

4.      Notification of Failure to Meet Minimum Funding ............... 34

5.      Funding Notices ................................................................... 35

6.      Pension Benefit Statements ................................................... 36

COUNT III ....................................................................................... 36

(Claim for Failure to Provide Minimum Funding Against
        Defendant Franciscan Alliance) ................................................ 36

COUNT IV ....................................................................................... 37

(Claim for Failure to Establish the Plan Pursuant to a Written
        Instrument Meeting the Requirements of ERISA § 402
        Against Defendant Franciscan Alliance) ................................... 37

COUNT V ........................................................................................ 38

(Claim for Failure to Establish a Trust Meeting the Requirements
        of ERISA § 403 Against Defendant Franciscan Alliance) ......... 38

COUNT VI ....................................................................................... 38

(Claim for Clarification of Future Benefits Under ERISA §§
        502(a)(1)(B) and 502(a)(3) Against Defendant Franciscan
        Alliance) ..................................................................................... 38

COUNT VII ...................................................................................... 39

(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
        Against Defendant Franciscan Alliance, Defendant
        Franciscan Alliance Pension Committee, and John and Jane
        Does 1-20, the Franciscan Alliance Pension Committee
        Member Defendants) ................................................................... 39

COUNT VIII ..................................................................................... 40

(Claim for Breach of Fiduciary Duty Against All Defendants) ........... 40

1.      Breach of the Duty of Prudence and Loyalty ........................... 41

2.    Prohibited Transactions ................................................................. 42

3.    Failure to Monitor Fiduciaries .................................................. 44

4.    Co-Fiduciary Liability .......................................................... 45

COUNT IX......................................................................................... 47

(Claim for Declaratory Relief That the Church Plan Exemption
Violates the Establishment Clause of the First Amendment
of the Constitution, and Is Therefore Void and Ineffective).................. 47

VIII.    PRAYER FOR RELIEF ............................................................. 50

Plaintiff Jean L. Jewett, individually and on behalf of all those similarly situated, as well as on behalf of the Franciscan Alliance Pension Security Plan, as defined herein, by and through her attorneys, hereby alleges as follows:

## I.      INTRODUCTION

1.      Defendant Franciscan Alliance, Inc. and Affiliates,[1] by and through its subsidiaries and/or affiliates ("Franciscan Alliance" or "Defendant"), operates a healthcare conglomerate in Illinois, Indiana, and Michigan and provides healthcare services in the communities it serves. This case concerns whether Franciscan Alliance properly maintains its pension plans under the Employee Retirement Income Security Act ("ERISA"). As demonstrated herein, Franciscan Alliance fails to do so, to the detriment of its over 14,600 employees who deserve better.

2.      As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension  . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

---

[1] Previously known as the Sisters of St. Francis Health Services, Inc. and renamed Franciscan Alliance, Inc. in November 2010.

3.     This class action is brought on behalf of all participants and beneficiaries of the Franciscan Alliance Pension Security Plan ("Franciscan Alliance Pension Security Plan" or simply the "Plan").[2]

4.     The Franciscan Alliance Pension Security Plan is a defined benefit pension plan that is established, maintained, administered, and sponsored by Franciscan Alliance.

5.     Franciscan Alliance is violating numerous provisions of ERISA, including, underfunding the Franciscan Alliance Pension Security Plan—while erroneously claiming that the Plan is exempt from ERISA's protections because it is a "Church Plan." The Franciscan Alliance Pension Security Plan does not meet the definition of a Church Plan under ERISA because Franciscan Alliance plainly is not a church or a convention or association of churches and because the Franciscan Alliance Pension Security Plan was not established by a church or a convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the Franciscan Alliance Pension Security Plan is not a Church Plan. *See Stapleton v. Advocate Health Care Network*, ___ F.3d ___, 2016 WL 1055784 (7th Cir. Mar. 17, 2016); *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015).

6.     Franciscan Alliance may claim that it is permitted to establish its own Church Plan under ERISA, even though it is not a church, because it is an organization "controlled by" or "associated with" a church, within the meaning of ERISA. Even if ERISA permitted such non-church entities to establish Church Plans, which it does not, Franciscan Alliance is not controlled by a church, as the evidence will show. Moreover, Franciscan Alliance is not associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

---

[2] Previously known as the Sisters of St. Francis Health Services, Inc. Pension Security Plan.

7.    Franciscan Alliance is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which Franciscan Alliance competes in its commercial healthcare activities. Franciscan Alliance is not owned or operated by a church and does not receive funding from a church. No denominational requirement exists for Franciscan Alliance employees. Indeed, Franciscan Alliance tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Franciscan Alliance employees. In choosing to recruit and hire from the population at large, Franciscan Alliance must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests.

8.    If Franciscan Alliance, a non-church organization, could itself establish a Church Plan, which Plaintiff disputes, the Court would be required to evaluate many levels of evidence to determine whether Franciscan Alliance shares common "religious bonds and convictions" with a church.

9.    Moreover, if the Court weighed all this evidence and determined that Franciscan Alliance did share such common religious bonds and convictions with a church, or if for any other reason the Court determined that the Franciscan Alliance Pension Security Plan fell within the scope of the Church Plan exemption, the Church Plan exemption would then be, as applied to Franciscan Alliance, an unconstitutional accommodation under the Establishment Clause of the First Amendment. Franciscan Alliance claims, in effect, that the participants in its defined benefit pension plan must be exempted from ERISA protections, and Franciscan Alliance must be relieved of its ERISA financial obligations, because Franciscan Alliance claims certain religious beliefs. The Establishment Clause, however, does not allow such an economic preference for Franciscan Alliance and burden-shifting to Franciscan Alliance employees.

Extension of the Church Plan exemption to Franciscan Alliance would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms Franciscan Alliance workers; (C) puts Franciscan Alliance competitors at an economic disadvantage; (D) relieves Franciscan Alliance of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

10.    Franciscan Alliance's claim of Church Plan status for its defined benefit pension plan fails under both ERISA and the First Amendment. Plaintiff seeks an Order requiring Franciscan Alliance to comply with ERISA and afford the Class all the protections of ERISA with respect to Franciscan Alliance's defined benefit pension plan, as well as an Order finding that the Church Plan exemption, as claimed by Franciscan Alliance, is unconstitutional because it violates the Establishment Clause of the First Amendment.

## II.    JURISDICTION AND VENUE

11.    **Subject Matter Jurisdiction.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.    **Personal Jurisdiction.** This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be

subject to a court of general jurisdiction in Illinois as a result of Defendant Franciscan Alliance transacting business in, and/or having significant contacts with this District.

13.     **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) some or all of the violations of ERISA took place in this District, and/or (b) Defendant Franciscan Alliance may be found in this District through its operation of Franciscan St. James Health – Olympia Fields in Olympia Fields, Illinois and Franciscan St. James Health – Chicago Heights in Chicago Heights, Illinois.

14.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Franciscan Alliance systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III.     PARTIES

**A.     Plaintiff Jean L. Jewett**

15.     Plaintiff Jean L. Jewett, was employed as a switchboard operator and in various clerical positions at St. Anthony's Medical Center, which is headquartered in Homewood, Illinois (Cook County), from March 24, 1975 until November 19, 2006. In 1999, St. Anthony's Medical Center was sold to the Sisters of St. Francis Health Services, Inc. In November, 2010, the Sisters of St. Francis Health Services, Inc. changed its name to Franciscan Alliance. Plaintiff Jewett is a vested participant in the Franciscan Alliance Pension Security Plan (previously known as the Sisters of St. Francis Health Services, Inc. Pension Security Plan). She is currently receiving a pension benefit under the Plan, in the amount of a monthly benefit of $173.60. Additionally and alternatively, Plaintiff Jewett has a colorable claim to benefits under a pension plan maintained by Franciscan Alliance and is a participant within the meaning of ERISA section

3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the

Franciscan Alliance Pension Security Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2),

(a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**B.    Defendants**

16.    As discussed below, all the Defendants are ERISA fiduciaries.

17.    **Defendant Franciscan Alliance and Affiliates** ("Franciscan Alliance").

Defendant Franciscan Alliance is a 501(c)(3) non-profit corporation organized under, and

governed by, Indiana law. Prior to November, 2010, Franciscan Alliance was known as the

Sisters of St. Francis Health Services, Inc. Franciscan Alliance has its corporate office in

Mishawaka, Indiana. Franciscan Alliance operates in Illinois, Indiana, and Michigan, and

includes 14 health center campuses, 72 primary care clinic sites, 81 specialty care clinic sites,

and numerous home care services organizations. Franciscan Alliance also includes various

accountable care organizations and physician hospital managed care networks, a non-profit

foundation, and a number of support related divisions and affiliates including a corporate office,

a consolidated information technology services division, back office/management support

organizations, a construction company, and a captive insurance company. For the ten month

period ended October 31, 2015, Franciscan Alliance had total operating revenue of $2.3 billion

and total assets of $4.7 billion. Franciscan Alliance employs more than 14,600 people.

18.    **Defendant Pension Committee for the Franciscan Alliance Pension Security**

**Plan and Defendants John and Jane Does, 1-20, Members of Defendant Pension Committee**

**for the Franciscan Alliance Pension Security Plan** (the "Pension Committee"). On information

and belief, Defendant Franciscan Alliance Pension Committee is the Plan Administrator of the

Franciscan Alliance Pension Security Plan. Defendants John and Jane Does 1-20 are individuals

who, through discovery, are found to be members of the Franciscan Alliance Pension Committee. These individuals will be added by their true names as Defendants in this action upon motion by Plaintiff at an appropriate time.

19.    **Defendants John and Jane Does 21-40**. Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Franciscan Alliance Pension Security Plan and are fiduciaries within the meaning of ERISA. These individuals will be added by their true names as Defendants in this action upon motion by Plaintiff at an appropriate time.

20.    Defendant Members of the Franciscan Alliance Pension Committee and John and Jane Does 21-40 are collectively referred to herein as the "Individual Defendants."

## IV.    THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.    The Adoption of ERISA

21.    Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965. *See generally* John Langbein, *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

22.    As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the Plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant

to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

23.     ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

**B.     The Scope of the Church Plan Exemption in 1974**

24.     As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and Church Plans. Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants. ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

25.     ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[3]

26.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of

---

[3] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively.  Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)). Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan. *Id*.

**C.    The Changes to the Church Plan Exemption in 1980**

27.    Church groups had two major concerns about the definition of "Church Plans" in ERISA as adopted in 1974. The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church. The second concern that arose in the church community after 1974 was more technical. Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches. This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans. In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

28.    These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan." Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364. The amended definition is current law.

29.    As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)). As amended, an "employee" of a church or a

convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id.* The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

30.    Two appellate cases have recently concluded that the statutory language in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear—only a church can establish a church plan, that the legislative history underscores this conclusion and that any agency decisions that reach a different conclusion—private letter rulings obtained without input from plan participants—are entitled to no deference. *See Stapleton v. Advocate Health Care Network*, --- F.3d ---, 2016 WL 1055784 (7th Cir. Mar. 17, 2016); *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015).

31.    As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits*, or both, for

the employees of a church or a convention or association of churches, if such
organization is controlled by or associated with a church or a convention or
association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current

version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan

"established" by a church or by a convention or association of churches could retain its "Church

Plan" status even if the plan was "maintained by" a distinct organization, so long as (1) "the

principal purpose or function of [the organization] is the administration or funding of a plan or

program for the provision of retirement benefits or welfare benefits" and (2) the organization is

"controlled by or associated with" the church or convention or association of churches. *Id.*

32.     This church "pension board" clarification, however, has no bearing on plans that

were not "established" by a church or by a convention or association of churches.  Thus, a plan

"established" by an organization "controlled by or associated with" a church is ***not*** a "Church

Plan" because it was not "established" by a church or by a convention or association of churches.

*See Stapleton*, --- F.3d ---, 2016 WL 1055784 at *11 (7th Cir. Mar. 17, 2016) ("[T]he plain

language of (33)(C) merely adds an alternative meaning to one of the subsection (33)(A)'s two

elements—"maintain" element—but does not change the fact that a plan must still be established

by a church."); *Kaplan*, 810 F.3d at 183 (3d Cir. 2015) ("The plain terms of ERISA only make

these exemptions available to plans established in the first instance by churches.").

33.     In the alternative, this "pension board" clarification has no bearing on plans that

were not "maintained" by a church pension board. Thus, even if a plan were "established" by a

church, and even if it were "maintained by" an organization "controlled by or associated with" a

church, such as a school, hospital, or publishing company, it still would not be a "Church Plan"

if the principal purpose of the organization was other than the administration or funding of the

plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension board:  No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan. *Compare with* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

34.     The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. And there is no tension between the legislative history of the 1980 amendment and the amendment itself:  the Congress enacted exactly what it wanted to enact. Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

35.     Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework. The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a Church. This, of course, is not what the statute says, nor what Congress intended. In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in

Department of Labor determinations. Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event. Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis. *See Stapleton*, --- F.3d ---, 2016 WL 1055784 at *12 (7th Cir. Mar. 17, 2016) ("[T]he IRS letter rulings are not persuasive and we owe them no deference").

## V.    FRANCISCAN ALLIANCE

**A.    Franciscan Alliance's Operations**

36.    Franciscan Alliance was incorporated in 1974 as a 501(c)(3) non-profit corporation organized under, and governed by, Indiana law. Prior to November 2010, it was known as the Sisters of St. Francis Health Services, Inc. Franciscan Alliance's corporate offices are located in Mishawaka, Indiana. Franciscan Alliance employs more than 14,600 people across Illinois, Indiana, and Michigan.

37.    Franciscan Alliance provides a full range of health services in south suburban Chicago, Illinois, including two hospitals, eight primary care facilities, four outpatient care facilities, an urgent care facility, an occupational care facility, and a specialty care facility.

38.    Franciscan Saint James Health – Chicago Heights in Chicago Heights, Illinois is one of Franciscan Alliance's hospitals in the State of Illinois.

39.    Franciscan Alliance also operates Franciscan St. James Health – Olympia Fields in Olympia Fields, Illinois.

40.    For the ten month period ended October 31, 2015, Franciscan Alliance had total operating revenue of $2.3 billion and total assets of $4.7 billion.

41.    In addition to its hospital network, Franciscan Alliance has branched out to include numerous subsidiaries and/or related entities, including for-profit corporations. For example, Franciscan Alliance owns the Hills Insurance Company, Ltd., a for-profit captive insurance subsidiary, and Franciscan Holding Corporation, a for-profit business management corporation that is the 95% owner of Tonn & Blank Construction, LLC, a construction company. Franciscan Alliance also ownership interests in Advantage Health, a for-profit health insurance plan, and Alverno Clinical Laboratories, LLC.

42.    Like other large non-profit hospital systems, Franciscan Alliance relies upon revenue bonds to raise money, and it has significant sums invested in, among other things, fixed-income securities, equity securities, and hedge funds.

43.    The principle purpose or function of Franciscan Alliance is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches.

44.    The management of Franciscan Alliance is comprised primarily of lay people, and Executive Officers of Franciscan Alliance receive compensation in line with executive officers of other hospital systems. For example, in 2013, the Franciscan Alliance President and Chief Executive Officer received reportable compensation of approximately $1.6 million and other compensation of over $480,000.

45.    Franciscan Alliance is not a church or a convention or association of churches. On information and belief, Franciscan Alliance claims some affiliation with the Catholic Church and with the Sisters of St. Francis of Perpetual Adoration.

46.    However, Franciscan Alliance is not owned by the Catholic Church, or any other church.

47.     Franciscan Alliance does not receive funding from the Catholic Church, or any other church.

48.     Franciscan Alliance does not claim that the Catholic Church, or any other church, has any liability for Franciscan Alliance's debts or obligations.

49.     On information and belief, neither the Catholic Church, nor any other church has any role in the governance of Franciscan Alliance.

50.     On information and belief, neither the Catholic Church, nor any other church has any role in the maintenance and/or administration of the Franciscan Alliance Plan.

51.     Franciscan Alliance specifically chooses not to impose any denominational requirement on its employees.

52.     Franciscan Alliance has no denominational requirement for its patients and/or clients.

53.     Franciscan Alliance complies with ERISA for one of its defined benefit pension plans, the Greater Lafayette Health Services Inc. Pension Security Plan. ("Greater Lafayette ERISA Plan").

54.      Franciscan Alliance purports to disclose, and not keep confidential, its own highly complex financial records. For example, Franciscan Alliance is required and, in some cases, has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid. In addition, Franciscan Alliance makes public its consolidated financial statements, which describe Franciscan Alliance's representations as to its own highly complex operations and financial affairs. Finally, Franciscan Alliance's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

B.    **The Franciscan Alliance Pension Security Plan**

55.    On information and belief, Franciscan Alliance established the Franciscan Alliance Pension Security Plan, which was previously known as the Sisters of St. Francis Health Services, Inc. Pension Security Plan, and has the power to continue, amend, or terminate the plan.

56.    Franciscan Alliance maintains the Franciscan Alliance Pension Security Plan.

57.    The Franciscan Alliance Pension Security Plan is a non-contributory defined benefit pension plan covering substantially all of Franciscan Alliance's employees.

58.    The Franciscan Alliance Pension Security Plan is currently underfunded by at least $378,269,000 (-76%) according to the Company's most recently published financial statements.

1.    **The Franciscan Alliance Pension Security Plan Meets the Definition of an ERISA Defined Benefit Plan**

59.    The Franciscan Alliance Pension Security Plan is a plan, fund, or program that was established and maintained by Franciscan Alliance and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond. As such, the Franciscan Alliance Pension Security Plan meets the definition of an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

60.    The Franciscan Alliance Pension Security Plan does not provide for an individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's account. As such, the Franciscan Alliance Pension Security Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not an

individual account plan or "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

>    **2.    The Defendants Meet the Definition of ERISA Fiduciaries**

>        **a.    Nature of Fiduciary Status**

61.    Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a fiduciary and, in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

62.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

63.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan's documents and/or through their conduct.

64.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under

the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

65.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

66.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

### b.    Defendants Are Each ERISA Fiduciaries

67.     **Defendant Franciscan Alliance**. Franciscan Alliance is the employer responsible for maintaining the Franciscan Alliance Pension Security Plan and is, therefore, the plan sponsor of the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Upon information and belief, Defendant Franciscan Alliance's responsibilities include fiduciary oversight of the Franciscan Alliance Pension Security Plan. Upon information and belief, Defendant Franciscan Alliance had the responsibility to appoint, and hence to monitor and remove, the members of the Franciscan Alliance Pension Committee.

68.     Defendant Franciscan Alliance is a fiduciary with respect to the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Franciscan Alliance Pension Security Plan, exercises authority and control

respecting management or disposition of the Franciscan Alliance Pension Security Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Franciscan Alliance Pension Security Plan.

**Franciscan Alliance Pension Committee Defendants**.

69.     Defendant Franciscan Alliance Pension Committee and Defendants John and Jane Does 1-20, as members of the Franciscan Alliance Pension Committee, are also fiduciaries with respect to the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Franciscan Alliance Pension Security Plan, exercise authority and control respecting management or disposition of the Franciscan Alliance Pension Security Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Franciscan Alliance Pension Security Plan.

70.     Plaintiff reserves the right to amend this Complaint to name other or additional Defendants once she has had the opportunity to conduct discovery on these issues.

71.     Although Franciscan Alliance maintains that the Franciscan Alliance Pension Security Plan is exempt from ERISA coverage as a Church Plan, it claims ERISA status for the Greater Lafayette ERISA Plan.

72.     Compliance with ERISA creates no undue, genuine burden on any religious practice of Franciscan Alliance, as evidence by Franciscan Alliance's claimed compliance with ERISA for the Greater Lafayette ERISA Plan.

**3.     The Franciscan Alliance Pension Security Plan Is Not a Church Plan**

73.     Franciscan Alliance claims that the Franciscan Alliance Pension Security Plan is a Church Plan under ERISA § 3(33), 29 U.S.C. § 1002(33), and the analogous section of the

Internal Revenue Code ("IRC"), and is therefore exempt from ERISA's coverage under ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2).

### a. Only Two Types of Plans May Qualify as Church Plans and the Franciscan Alliance Pension Security Plan Is Neither Type

74.    Under § 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- First, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- Second, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as "Church Plans."

75.    Although other portions of ERISA § 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA § 3(33)(C) do not add any other type of *plan* that can be a Church Plan. 29 U.S.C. § 1002(33)(C). The only two types of plans that can qualify as Church Plans are those described in ERISA § 3(33)(A) and in § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) and (C)(i). The Franciscan Alliance Pension Security Plan does not qualify as a Church Plan under either ERISA § 3(33)(A) or § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) or (C)(i).

76.    First, under ERISA § 3(33)(A), "[t]he term "church plan" means a plan established and maintained for its employees by a church or by a convention or association of

churches which is exempt from tax under section 501 of title 26." ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). A church plan "means," and therefore by definition, *must be* "a plan established . . . by a church or convention or association of churches."

77.    The Franciscan Alliance Pension Security Plan at issue here is not a Church Plan as defined in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), because the Franciscan Alliance Pension Security Plan was established, maintained, administered or sponsored by Franciscan Alliance for its own, or its affiliates' own, employees.  Because neither Franciscan Alliance nor its affiliates are a church or a convention or association of churches, nor do they claim to be, the Franciscan Alliance Pension Security Plan was not "established and maintained by" a church or by a convention or association of churches and was not maintained for employees of any church or convention or association of churches. That is the end of the inquiry under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

78.    Second, under ERISA § 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

79.    The Franciscan Alliance Pension Security Plan is not a Church Plan as defined in ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Franciscan Alliance Pension Security Plan was not "established" by a church or by a convention or association of churches. Moreover, the Franciscan Alliance Pension Security Plan does not qualify as a "Church Plan"

under section 3(33)(C)(i) because it is not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. This ends any argument that the Franciscan Alliance Pension Security Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

80.     82.     In the alternative, to the extent that Franciscan Alliance claims that the Franciscan Alliance Pension Security Plan qualifies as a "Church Plan" under section 3(33)(C)(i) because it is "maintained" by an entity within Franciscan Alliance, other than Franciscan Alliance, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the Franciscan Alliance Pension Security Plan, which includes the power to continue and/or terminate the Plan, is Franciscan Alliance. The claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church. This ends any argument that the Franciscan Alliance Pension Security Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because it is maintained by an entity other than Franciscan Alliance.

81.     However, even if the Franciscan Alliance Pension Security Plan had been "established" by a church and even if the principal purpose or function of Franciscan Alliance was the administration or funding of the Franciscan Alliance Pension Security Plan (instead of running a hospital conglomerate), the Franciscan Alliance Pension Security Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the

principal purpose of the Plan is not to provide retirement or welfare benefits to *employees of a church or convention or association of churches*. For example, the approximately 14,600 participants in the Franciscan Alliance Pension Security Plan work for Franciscan Alliance, a non-profit hospital conglomerate. Franciscan Alliance is not a church or convention or association of churches and its employees are not employees of a church or convention or association of churches within the meaning of ERISA.

82.     Under ERISA § 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax exempt organization that is controlled by or associated with a church or a convention or association of churches also may be considered an employee of a church. This part of the definition merely explains which employees a church plan may cover *once a valid church plan is established*. The Franciscan Alliance Plan also fails this part of the definition, because Franciscan Alliance is not controlled by or associated with a church or convention or association of churches within the meaning of ERISA.

83.     Franciscan Alliance is not controlled by a church or convention or association of churches.

84.     Franciscan Alliance is not owned or operated by a church and does not receive funding from a church.[4]

85.     In addition, Franciscan Alliance is not "associated with" a church or convention or association of churches within the meaning of ERISA. Under ERISA § 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or

---

[4] Notably, if Franciscan Alliance were "controlled by" the Catholic Church or some other church, then those churches would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Franciscan Alliance.

convention or association of churches." Franciscan Alliance does not share common religious

bonds and convictions with a church or association of churches.

86.    For example, Franciscan Alliance tells prospective employees that religious

affiliation is not a factor in the recruiting and hiring of Franciscan Alliance employees. In

choosing to recruit and hire from the population at large, Franciscan Alliance must also be

willing to accept generally applicable, neutral regulations, such as ERISA, which protect those

employees' legitimate interests.

87.    In addition, Franciscan Alliance has a practice of partnering with organizations

that claim no religious affiliation, such as Specialty Physicians of Illinois, a 36 physician and

three Advance Nurse Practitioner multi-specialty practice in the south suburbs of Chicago; and

Advantage Health Solutions, Inc., a provider-owned health plan. In choosing to compete in the

commercial arena of healthcare services and to embark upon a business plan that targets

healthcare facilities with no claimed ties to any particular religion, or to religion generally,

Franciscan Alliance must be willing to accept neutral regulations, such as ERISA, imposed to

protect its employees' legitimate interests.

88.    The Franciscan Alliance Pension Security Plan further fails to satisfy the

requirements of ERISA § 3(33)(C)(i) because this section requires the organization that

maintains the plan to be "controlled by or associated with" a church or convention or association

of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i). Thus, even if (1) a

church had "established" the Franciscan Alliance Pension Security Plan (which it did not), (2)

the principal purpose or function of Franciscan Alliance was the administration or funding of the

Franciscan Alliance Pension Security Plan (instead of running a hospital conglomerate), and (3)

Franciscan Alliance's employees were employees of a church or convention or association of

churches (which they are not), the Franciscan Alliance Pension Security Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i) because—for the reasons outlined above—Franciscan Alliance is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i).

89.    Finally, even if Franciscan Alliance were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA § 3(33)(C)(ii)(2), and even if the Franciscan Alliance Pension Security Plan were "maintained by" either a church or "pension board" satisfying the requirements of ERISA § 3(33)(C)(i), the Franciscan Alliance Pension Security Plan still would not be a "Church Plan" because all "Church Plans" must be "established" by a church or by a convention or association of churches. 29 U.S.C. §§ 1002(33)(A), (C)(i). Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization. Accordingly, because no church established the Franciscan Alliance Pension Security Plan, the Plan cannot be a "Church Plan" within the meaning of ERISA.

             **b.**     **Even if the Franciscan Alliance Pension Security Plan Could Otherwise Qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it is Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)**

90.    Under ERISA § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches. In this case, there are approximately 14,600

participants in the Franciscan Alliance Pension Security Plan, and very nearly all of them are non-clergy healthcare workers.

91.     If the approximately 14,600 participants in the Franciscan Alliance Pension Security Plan do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Franciscan Alliance Pension Security Plan could otherwise qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

92.     As set forth above, Franciscan Alliance is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches.

> **c.     Even if the Franciscan Alliance Pension Security Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Franciscan Alliance, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

93.     The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

94.     The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (e.g. exempts them from neutral regulations) at the expense of non-adherents and/or while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to Franciscan Alliance, a non-church entity, privileges Franciscan Alliance for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections. Similarly, Franciscan Alliance, a non-church

entity, has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on Franciscan Alliance's claimed religious beliefs. This too is prohibited by the Establishment Clause. Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g.*, *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n. 8 (1989) (plurality opinion).

95.     As set forth in more detail below in Count IX, the extension of the Church Plan accommodation to Franciscan Alliance, which is not a church, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms Franciscan Alliance workers, puts Franciscan Alliance competitors at an economic disadvantage, relieves Franciscan Alliance of no genuine religious burden created by ERISA, and creates more government entanglement with alleged religious beliefs than compliance with ERISA creates. Accordingly, the Church Plan exemption, as claimed by Franciscan Alliance, is void and ineffective.

## VI.     CLASS ALLEGATIONS

96.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated: All participants or beneficiaries of the Franciscan Alliance Pension Security Plan.

97.     Excluded from the Class are any high-level executives at Franciscan Alliance or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Franciscan Alliance Pension Security Plan, including the Individual Defendants.

A.    **Numerosity**

98.    The exact number of Class members is unknown to Plaintiff at this time, but may be readily determined from records maintained by Franciscan Alliance. Franciscan Alliance currently employs approximately 14,600 individuals. Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

B.    **Commonality**

99.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA.

100.    The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and enforce the funding obligations of the Plan in accordance with ERISA; and (3) an order requiring Franciscan Alliance to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

C.    **Typicality**

101.    Plaintiff's claims are typical of the claims of the other members of the Class because her claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA. Plaintiff's claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

102.    Plaintiff's claims are also typical of the claims of the other members of the Class because, to the extent Plaintiff seeks equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Franciscan Alliance Pension Security Plan is not a Church Plan; and (ii) a declaration that the Franciscan Alliance Pension Security Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA. In addition, to the extent Plaintiff seeks monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

103.    Franciscan Alliance does not have any defenses unique to Plaintiff's claims that would make Plaintiff's claims atypical of the remainder of the Class.

**D.    Adequacy**

104.    Plaintiff will fairly and adequately represent and protect the interests of all members of the Class.

105.    Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

106.    Defendant Franciscan Alliance and the Individual Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

107.    Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.    Rule 23(b)(1) Requirements**

108.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

109.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

110.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements**

111.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by Franciscan Alliance, violates the Establishment Clause of the First Amendment. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.      Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

B.      Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.      There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.      This litigation is properly concentrated in this forum, which is where Defendant Franciscan Alliance transacts business and where Plaintiff Jewett lives and accrues benefits; and

E.      There are no difficulties managing this case as a class action.

## VII.      CAUSES OF ACTION

### COUNT I
**(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance, Defendant Franciscan Alliance Pension Committee and John and Jane Does 1-20, the Franciscan Alliance Pension Committee Member Defendants)**

112.    Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

113.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title." Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Franciscan Alliance Pension Security Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of Title I and Title IV of ERISA.

114.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision

of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiff seeks orders directing the Franciscan Alliance Pension Security Plan's sponsor and administrator to bring the Franciscan Alliance Pension Security Plan into compliance with ERISA.

115.    ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plan as a non-ERISA plan was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiff also seeks plan-wide equitable and remedial relief under ERISA § 502(a)(2).

116.    As the Franciscan Alliance Pension Security Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Franciscan Alliance Pension Security Plan should be declared to be an ERISA-covered pension plan, and the Franciscan Alliance Pension Security Plan's sponsor and administrator should be ordered to bring the Franciscan Alliance Pension Security Plan into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II

**(Claim for Violation of Reporting and Disclosure Provisions Against Defendant Franciscan Alliance Pension Committee and John and Jane Does 1-20, the Franciscan Alliance Pension Committee Member Defendants)**

117.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

### 1.    Summary Plan Descriptions

118.    At no time has the Franciscan Alliance Pension Committee or its members provided Plaintiff or any member of the Class with a Summary Plan Description with respect to the Franciscan Alliance Pension Security Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

119.    Because the Franciscan Alliance Pension Committee has been the Plan Administrator of the Plan at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

### 2.    Annual Reports

120.    At no time has the Franciscan Alliance Pension Committee or its members filed an annual report with respect to the Franciscan Alliance Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

121.    Because the Franciscan Alliance Pension Committee has been the Plan Administrator of the Franciscan Alliance Pension Security Plan at all relevant times, the Franciscan Alliance Pension Committee Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Franciscan Alliance Pension

Security Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or

Form 5500s and associated schedules and attachments, which the Secretary has approved as an

alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

### 3.    Summary Annual Reports

122.    At no time has the Franciscan Alliance Pension Committee or its members

furnished Plaintiff or any member of the Class with a Summary Annual Report with respect to

the Franciscan Alliance Pension Security Plan in compliance with ERISA § 104(b)(3) and

regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

123.    Because the Franciscan Alliance Pension Committee has been the Plan

Administrator of the Franciscan Alliance Pension Security Plan at all relevant times, the

Franciscan Alliance Pension Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C.

§ 1024(b)(3), by failing to furnish Plaintiff or any member of the Class with a Summary Annual

Report with respect to the Franciscan Alliance Pension Security Plan in compliance with ERISA

§ 104(b)(3) and the regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

### 4.    Notification of Failure to Meet Minimum Funding

124.    At no time has the Franciscan Alliance Pension Committee or its members

furnished Plaintiff or any member of the Class with a Notice with respect to the Franciscan

Alliance Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that

Franciscan Alliance had failed to make payments required to comply with ERISA § 302, 29

U.S.C. § 1082, with respect to the Franciscan Alliance Pension Security Plan.

125.    Defendant Franciscan Alliance has been the employer that established and/or

maintained the Franciscan Alliance Pension Security Plan.

126.    At no time has Defendant Franciscan Alliance funded the Franciscan Alliance Pension Security Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

127.    As the employer maintaining the Franciscan Alliance Pension Security Plan, Defendant Franciscan Alliance has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the Franciscan Alliance Pension Security Plan. Because the Franciscan Alliance Pension Committee has been the Plan Administrator of the Franciscan Alliance Pension Security Plan at all relevant times, it has violated ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1).

**5.    Funding Notices**

128.    At no time has the Franciscan Alliance Pension Committee or its members furnished Plaintiff or any member of the Class with a Funding Notice with respect to the Franciscan Alliance Pension Security Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

129.    Because the Franciscan Alliance Pension Committee has been the Plan Administrator of the Franciscan Alliance Pension Security Plan at all relevant times, it has violated ERISA § 101(f) by failing to provide each participant and beneficiary of the Franciscan Alliance Pension Security Plan with the Funding Notice required by ERISA § 101(f), and as such may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA § 101(f).  29 U.S.C. § 1021(f).

### 6.    Pension Benefit Statements

130.    At no time has the Franciscan Alliance Pension Committee or its members furnished Plaintiff or any member of the Class with a Pension Benefit Statement with respect to the Franciscan Alliance Pension Security Plan pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

131.    Because the Franciscan Alliance Pension Committee has been the Plan Administrator of the Franciscan Alliance Pension Security Plan at all relevant times, it has violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiff and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1).  29 U.S.C. § 1025(a)(1).

### COUNT III
### (Claim for Failure to Provide Minimum Funding Against Defendant Franciscan Alliance)

132.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

133.    ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

134.    Franciscan Alliance was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

135.    Franciscan Alliance has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

136.    By failing to make the required contributions to the Franciscan Alliance Pension Security Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant Franciscan Alliance has violated ERISA § 302, 29 U.S.C. § 1082.

137.

**COUNT IV**
**(Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402 Against Defendant Franciscan Alliance)**

138.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

139.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

140.    Although the benefits provided by the Franciscan Alliance Pension Security Plan were described to the employees and retirees of Franciscan Alliance (and/or its affiliates and subsidiaries) in various written communications, the Franciscan Alliance Pension Security Plan has never been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

141.    Defendant Franciscan Alliance violated section 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Franciscan Alliance Pension Security Plan's operations and administration. 29 U.S.C. § 1102.

## COUNT V
**(Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant Franciscan Alliance)**

142.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

143.    ERISA § 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in § 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

144.    Although the Franciscan Alliance Pension Security Plan's assets have been held in trust, the trust does not meet the requirements of ERISA § 403, 29 U.S.C. § 1103.

145.    Defendant Franciscan Alliance violated section 403 by failing to put the Franciscan Alliance Pension Security Plan's assets in trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

## COUNT VI
**(Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant Franciscan Alliance)**

146.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

147.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

148.    Plaintiff and members of the class have not been provided ERISA-compliant benefit statements.

149.    Pursuant to ERISA §§ 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plan is made compliant with ERISA, Plaintiff seeks to clarify her rights under the terms of the Plan and to require Defendant Franciscan Alliance to provide Plaintiff and the Class ERISA-compliant benefit statements.

## COUNT VII
**(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant Franciscan Alliance, Defendant Franciscan Alliance Pension Committee, and John and Jane Does 1-20, the Franciscan Alliance Pension Committee Member Defendants)**

150.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

151.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

152.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA § 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

153.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

154.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to

provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

155.    As Defendant Franciscan Alliance, as the employer, has failed to give the notices required by ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart 4, Defendant Franciscan Alliance is liable to Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

156.    As the Franciscan Alliance Pension Committee, as Plan Administrator of the Plan, has failed to give the notices required by ERISA § 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statement required by ERISA § 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts 5 through 6, the Franciscan Alliance Pension Committee and the Franciscan Alliance Pension Committee Member Defendants are liable to the Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

**COUNT VIII**
**(Claim for Breach of Fiduciary Duty Against All Defendants)**

157.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

158.    Plaintiff brings this Count VII for breach of fiduciary duty pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

### 1.    Breach of the Duty of Prudence and Loyalty

159.    This sub-Count alleges fiduciary breach against all Defendants.

160.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

    (i)    providing benefits to participants and beneficiaries; and

    (ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

161.    As fiduciaries with respect to the Franciscan Alliance Pension Security Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Franciscan Alliance Pension Security Plan during the times that each was a fiduciary of the Franciscan Alliance Pension Security Plan.

162.    Defendants have never enforced any of the provisions of ERISA set forth in Counts I-V with respect to the Franciscan Alliance Pension Security Plan.

163.    By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

164.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Franciscan Alliance Pension Security Plan equal to the foregone funding and earnings thereon, and profited Defendant Franciscan Alliance by providing it the use of the money owed to the Franciscan Alliance Pension Security Plan for its general business purposes.

**2.      Prohibited Transactions**

165.    This sub-Count alleges violations on behalf of all Defendants.

166.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

167.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

168.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

169.    As fiduciaries with respect to the Plan and, with respect to Franciscan Alliance, as an employer of employees covered by the Plan, the Defendants at all relevant times were parties

in interest with respect to the Franciscan Alliance Pension Security Plan pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

170.    By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Franciscan Alliance Pension Security Plan to Franciscan Alliance in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

171.    By failing to enforce the funding obligations created by ERISA and owed to the Franciscan Alliance Pension Security Plan, Defendants used Franciscan Alliance Plan assets for Franciscan Alliance's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Franciscan Alliance Plan assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

172.    By failing to enforce the funding obligations created by ERISA and owed to the Franciscan Alliance Pension Security Plan, Defendants used Franciscan Alliance Plan assets in Franciscan Alliance's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

173.    The failure of Defendants to enforce the funding obligations owed to the Franciscan Alliance Pension Security Plan has resulted in a loss to the Franciscan Alliance Pension Security Plan equal to the foregone funding and earnings thereon.

174.    The failure of Defendants to enforce the funding obligations owed to the Franciscan Alliance Pension Security Plan has profited Defendant Franciscan Alliance by providing it the use of money owed to the Franciscan Alliance Pension Security Plan for its general business purposes.

### 3.    Failure to Monitor Fiduciaries

175.    This sub-Count alleges fiduciary breach against Defendant Franciscan Alliance.

176.    As alleged above, during the Class Period, Defendant Franciscan Alliance was a named fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

177.    The scope of the fiduciary responsibilities of Franciscan Alliance included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

178.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

179.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

180.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the

plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

181.    Defendant Franciscan Alliance breached its fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plan as an ERISA plan; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plan as an ERISA Plan; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plan as a non-ERISA Plan, and who breached their fiduciary duties under ERISA.

182.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Franciscan Alliance Pension Security Plan equal to the foregone funding and earnings thereon, and profited Defendant Franciscan Alliance by providing it the use of money owed to the Franciscan Alliance Pension Security Plan for its general business purposes.

### 4.    Co-Fiduciary Liability

183.    This sub-Count alleges co-fiduciary liability against all Defendants.

184.    As alleged above, all Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

185.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails

to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

186.     **Knowledge of a Breach and Failure to Remedy**.  ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

187.     Because Defendants knew that the Plan was not being run as an ERISA Plan, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA. Yet, they failed to undertake any effort to remedy these breaches.

188.     **Knowing Participation in a Breach**. ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Franciscan Alliance knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plan not being run as an ERISA Plan.

189.     **Enabling a Breach**. ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

190.     The failure of Defendant Franciscan Alliance to monitor the Franciscan Alliance Pension Committee enabled that committee to breach its duties.

191.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan is currently underfunded, meaning that the Plan does not have sufficient assets to pay all accrued benefits it has promised to its participants and beneficiaries and is legally obligated to pay under ERISA.

192.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Franciscan Alliance Pension Security Plan equal to the foregone funding and earnings thereon, and profited Defendant Franciscan Alliance by providing it the use of money owed to the Franciscan Alliance Pension Security Plan for its general business purposes.

**COUNT IX**
**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

193.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

194.    The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

195.    The ERISA Church Plan exemption, as claimed by Franciscan Alliance, is an attempt to extend the accommodation beyond churches and associations of churches, to Franciscan Alliance—a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace.  Extension of the Church Plan exemption to Franciscan Alliance violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms Franciscan Alliance workers, (C) puts Franciscan Alliance competitors at an economic disadvantage, (D) relieves Franciscan Alliance

of no genuine religious burden created by ERISA, and (E) creates more government

entanglement with alleged religious beliefs than compliance with ERISA creates.

A.    <u>Not Necessary to Further Stated Purpose</u>. Congress enacted the Church

Plan exemption to avoid "examination of books and records . . . an unjustified invasion of

the confidential relationship with regard to churches and their religious activities."[5] This

purpose has no application to Franciscan Alliance, which is neither run by nor intimately

connected to any church financially. And, unlike a church, Franciscan Alliance has *no*

*confidential books and records* to shield from government scrutiny. Franciscan Alliance

already purports to disclose all material financial records and relationships when it seeks

Medicare and Medicaid reimbursements and issues tax exempt bonds.

B.    <u>Harms Workers</u>.  Employers, including Franciscan Alliance, are not

legally required to provide pensions; instead, they choose to provide pensions in order to

reap tax rewards and attract and retain employees in a competitive labor market.

Franciscan Alliance tells prospective employees that any choice of faith, or lack thereof,

is not a factor in the recruiting and hiring of Franciscan Alliance employees.  Thus, as a

practical matter, and by Franciscan Alliance's own design, its pension plan participants

include people of a vast number of divergent faiths, as well as those who belong to no

faith. In choosing to recruit and hire from the public at large, Franciscan Alliance must be

willing to accept neutral regulations, such as ERISA, imposed to protect those

employees' legitimate interests. To be constitutional, an accommodation such as the

Church Plan exemption must not impose burdens on non-adherents without due

consideration of their interests. The Church Plan exemption, as claimed by Franciscan

---

[5]    S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

Alliance, places its tens of thousands of longtime employees' justified reliance on their

pension benefits at great risk, including because the Plan is uninsured and underfunded.

In addition, Franciscan Alliance fails to provide the multitude of other ERISA protections

designed to safeguard its employees' pensions. The Church Plan exemption, as claimed

by Franciscan Alliance, provides no consideration of the harm that it causes to Franciscan

Alliance's employees.

      C.     <u>Puts Franciscan Alliance's Competitors at an Economic Disadvantage</u>.

Franciscan Alliance's commercial rivals face material disadvantages in their competition

with Franciscan Alliance because the rivals must use their current assets to fully fund,

insure (through premiums to the PBGC), and administer their pension plans, as well as

providing other ERISA protections.  In claiming that the Franciscan Alliance Pension

Security Plan is an exempt Church Plan, Franciscan Alliance enjoys a material

competitive advantage because it is able to divert significant cash, which otherwise

would be required to fund, insure (through premiums to the PBGC), and administer the

Franciscan Alliance Pension Security Plan, to its competitive growth strategy. To be

constitutional, an accommodation such as the Church Plan exemption must take adequate

account of harm to nonbeneficiaries. The Church Plan exemption, as applied by

Franciscan Alliance, provides no consideration of the disadvantage it creates for

Franciscan Alliance's competitors.

      D.     <u>Relieves No Genuine Religious Burden Imposed by ERISA</u>.  An

exemption exclusively for religion must alleviate a significant, *state-imposed* interference

with religious exercise. The Church Plan exemption, as claimed by Franciscan Alliance,

responds to no genuine burden created by ERISA on any of Franciscan Alliance's

religious practices. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities. Moreover, Franciscan Alliance maintains a separate ERISA-governed plan, which further evidences that ERISA creates no undue burden on any genuine religious practice of Franciscan Alliance.

   E. <u>Creates Government Entanglement with Alleged Religious Beliefs</u>. A Franciscan Alliance exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This *creates* entanglement between government and putative religious beliefs. ERISA compliance, on the other hand, requires *zero* entanglement with religion for Franciscan Alliance because ERISA is a neutral statute that regulates pension protections and Franciscan Alliance has no relevant confidential books, records or relationships. Thus, an extension of the Church Plan exemption to Franciscan Alliance produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

196. Plaintiff seeks a declaration by the Court that the Church Plan exemption, as claimed by Franciscan Alliance, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.    Declaring that the Franciscan Alliance Pension Security Plan is an employee

pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined

benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a

Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33).

B.    Ordering Franciscan Alliance to reform the Franciscan Alliance Pension Security

Plan to bring it into compliance with ERISA and to have the Franciscan Alliance Pension

Security Plan comply with ERISA, including as follows:

1.    Revising the Plan documents to reflect that the Plan is a defined benefit

plan regulated by ERISA.

2.    Requiring Franciscan Alliance to fund the Franciscan Alliance Pension

Security Plan in accordance with ERISA's funding requirements, disclose required

information to the Franciscan Alliance Pension Security Plan participants and

beneficiaries, and otherwise comply with all other reporting, vesting, and funding

requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61,

1081-85.

3.    Reforming the Franciscan Alliance Pension Security Plan to comply with

ERISA's vesting, accrual, and lump sum option requirements, and providing benefits in

the form of a qualified joint and survivor annuity.

4.    Requiring the adoption of instruments governing the Franciscan Alliance

Pension Security Plan that comply with ERISA § 402, 29 U.S.C. § 1102.

5.    Requiring Franciscan Alliance to comply with ERISA reporting and

disclosure requirements, including by filing Form 5500 reports, distributing ERISA-

compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant

Participant Benefit Statements, and providing Notice of the Franciscan Alliance Pension Security Plan's funding status and deficiencies.

6. Requiring clarification of rights to future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B).

7. Requiring the establishment of a Trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

C. Requiring Franciscan Alliance, as a fiduciary of the Plan, to make the Franciscan Alliance Pension Security Plan whole for any losses and disgorge any Franciscan Alliance profits accumulated as a result of fiduciary breaches.

D. Appointing an Independent Fiduciary to hold the Franciscan Alliance Pension Security Plan's assets in trust, to manage and administer the Franciscan Alliance Pension Security Plan and its assets, and to enforce the terms of ERISA.

E. Requiring Franciscan Alliance to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to properly fund the Plan.

F. Requiring Franciscan Alliance to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide Plaintiff and each Class member with a Funding Notice.

G. Requiring Franciscan Alliance to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

H.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Franciscan Alliance Pension Security Plan.

I.      Declaring, with respect to Count IX, that the Church Plan exemption, as claimed by Franciscan Alliance, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

J.      Awarding to Plaintiff attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

K.      Awarding to Plaintiff taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

L.      Awarding to Plaintiff pre-judgment interest on any amounts awarded pursuant to law.

M.      Awarding, declaring or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED: April 22, 2016          Respectfully submitted,

_____/s/ Carol V. Gilden_____

COHEN MILSTEIN SELLERS & TOLL, PLLC
Carol V. Gilden
Illinois Bar No.: 6185530
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370 / Fax: (312) 357-0369
Email: cgilden@cohenmilstein.com

COHEN MILSTEIN SELLERS & TOLL, PLLC
Karen L. Handorf
Michelle C. Yau
Kira L. Hettinger

1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email: khandorf@cohenmilstein.com
myau@cohenmilstein.com
khettinger@cohenmilstein.com

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
lgerber@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email: rkilgard@kellerrohrback.com

**Attorneys for Plaintiffs**